IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NO._____

5:05-CV-646-D(3)

FILED
SEP 2 2 2005
FRED L. BORCH III, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

| | |
|---|---|
| DEAN M. MORRON, ) | |
| Plaintiff, ) | |
| v. ) | NOTICE OF REMOVAL |
| ADT SECURITY SERVICES, ) | |
| Defendant. ) | |

TO: The Judges of the United States District Court of the Eastern District of North Carolina

COMES NOW defendant ADT Security Services ("defendant"), by this Notice of Removal respectfully show as follows:

1. Defendant is incorporated under the laws of the state of Delaware and does business in North Carolina.

2. Plaintiff Dean M. Morron ("plaintiff"), is a resident of Wake County, North Carolina.

3. On August 26, 2005, plaintiff filed a complaint against defendant in the Superior Court of Wake County. The complaint alleges that defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*

4. A copy of the summons and the complaint was allegedly served on defendant on September 2, 2005. Copies of the summons and complaint are attached as exhibits to this Notice of Removal. These documents constitute the entire pleadings to date.

5. This Court has original jurisdiction of this civil action under the provisions of 28 U.S.C. § 1331 and 15 U.S.C. §§ 1681, *et seq.*, because plaintiff's statutory claim arises under the laws of the United States.

6. Because this action satisfies the requirements of 28 U.S.C. §§ 1331 and 1367, giving this Court original jurisdiction over the plaintiff's claim, this action is one that may be removed to this Court pursuant to 28 U.S.C. § 1441.

WHEREFORE, defendant respectfully prays that this action, originally brought in North Carolina Superior Court of Wake County, be immediately removed to this Court.

This the 22nd day of September, 2005.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*/s/ Gretchen W. Ewalt*

*/s/ John E. Branch III*

Gretchen W. Ewalt
John E. Branch III
2301 Sugar Bush Road, Suite 600
Raleigh, NC 27612
919.787.9700
919.783.9412 fax
gretchen.ewalt@ogletreedeakins.com
john.branch@ogletreedeakins.com
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I, John E. Branch III, do hereby certify that I have this day served a copy of the foregoing **Notice of Removal** upon the following persons, by placing a copy of the same in the United States mail, properly addressed, with the correct amount of postage affixed thereto:

> David G. Schiller
> Schiller & Schiller PLLC
> 5540 Munford Rd.
> Suite 101
> Raleigh, NC 27612

This 22nd day of September, 2005.

> OGLETREE, DEAKINS, NASH,
> SMOAK & STEWART, P.C.
>
> By: _John E. Branch III_
> John E. Branch III
> 2301 Sugar Bush Road, Suite 600
> Raleigh, NC 27612
> 919.787.9700
> 919.783.9412 fax
> john.branch@ogletreedeakins.com
> **Attorney for Defendant**

```
                                          5CV011797
```

STATE OF NORTH CAROLINA       IN THE GENERAL COURT OF JUSTICE
                                            SUPERIOR COURT DIVISION
WAKE COUNTY

DEAN M. MORRON,               )
                                      )
        Plaintiff,           )
                                      )
v.                                   )
                                      )
ADT SECURITY SERVICES, INC.  )
                                      )
        Defendant.          )

**COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, COMPENSATORY AND
PUNITIVE DAMAGES UNDER THE
AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. § 621,
AND OTHER RELIEF
(JURY TRIAL REQUESTED)**

### I. JURISDICTION & VENUE

1.    This is an action seeking legal, equitable, and declaratory relief under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (as amended)(hereinafter "ADEA"). Jurisdiction is conferred upon this Court by 29 U.S.C. Section 626(b)&(c)), 29 U.S.C. Section 216(b), 28 U.S.C. §§ 1331, 1337 and 1367. Venue for all causes of action stated herein is in Wake County, North Carolina.

### II. PARTIES

2.    Plaintiff Dean M. Morron ("Plaintiff") age forty-nine (49), is a resident of Wake County, North Carolina.

3.    Defendant ADT Security Services, Inc. ("Defendant") is a Delaware corporation. Defendant provides resident, small business, and commercial security. Defendant does business in Raleigh, Wake County, North Carolina, and is an employer as defined by the ADEA.

## III. FACTS

4. Plaintiff began working for Defendant on January 19, 1999 as a Residential Sale Representative. His essential job duties were to sell security services to residential customers.

5. Defendant's Sales Manager in 1999, Steve Watson, hired Plaintiff.

6. In mid-2001, Defendant divided its residential program into two (2) divisions. One division, called "high volume," sold security systems for homes of less than 2500 square feet. The other division, called "custom," sold security systems for homes of more than 2500 square feet.

7. Defendant's Sales Manager in 2001, Steve Nizwicki, told Plaintiff that Defendant was dividing the sales representatives into two groups because the customers with larger, more expensive homes were being "undersold." That is, the customers with larger homes were not being presented with all of their options for security systems, and they were purchasing inexpensive security systems relative to the cost and size of their homes. Defendant, therefore, felt that it would be advantageous to employ more experienced sales representatives as Custom Residential Representatives to increase the amount of the sales to customers with larger, more expensive homes.

8. Sales Manager Nizwicki offered Plaintiff Morron a position as a Custom Residential Representative, which Plaintiff accepted. As a Custom Residential Representative, Plaintiff Morron was paid straight commission of his sales.

9. Defendant's telemarketing department in Jacksonville, Florida generated a Lead Classified List about once (1) each week for the Custom Residential Representatives, including Plaintiff. The Lead Classified List stated names, addresses and telephone numbers of potential customers and an appointment time and place for those customers.

2

10. The Lead Classified List provided Plaintiff with about 75% of his sales leads.

11. Nonetheless, Plaintiff led the Raleigh sales office in self-generated sales.

12. More than half of the Raleigh sales representatives relied entirely on the telemarketing leads for their sales.

13. In March 2004, Plaintiff noticed a sharp decrease in his lead sources in the Lead Classified List. Plaintiff had been receiving about eight (8) to ten (10) leads per week. Plaintiff was now receiving about two (2) leads per week.

14. Custom Residential Representative Jesse R. Winn, Jr., who was at least sixty (60) years old at the time, also noticed a similar decline in his own telemarketing leads.

15. Albert Marero, a High Volume Sales Representative, was receiving custom lead sources even though he was classified as a "high volume" representative. Upon information and belief, Marero was under age forty (40) in March 2004, and, in any event, was substantially younger than Plaintiff.

16. Plaintiff and Sales Representative Winn discussed the decrease in their sales leads with Raleigh General Manager Bob Gray and Sales Manager Angie Sargent.

17. Both Plaintiff and Winn told Manager Gray that they believed they were being treated unfairly.

18. Manager Sargent told Plaintiff and Winn that sales representatives could not be classified as both "high volume" and "custom."

19. Therefore, "high volume" sales representatives, such as Marero were not supposed to be receiving custom sales leads, and custom sales representatives were not supposed to be receiving high volume sales leads.

3

20. Upon information and belief, Manager Sargent had been directing custom sales leads to Marero in March 2004.

21. General Manager Gray and Sales Manager Sargent told Plaintiff and Winn that there must just be a lull in telemarketing sales leads.

22. The following week, Plaintiff's and Winn's telemarketing leads were back to their prior levels, approximately eight (8) to ten (10) leads per week.

23. In October, November, and December 2004, Plaintiff's telemarketing sales leads sharply decreased once again. By this time, Winn no longer worked for Defendant. Plaintiff was Defendant's only Custom Sales Representative in Raleigh in late 2004.

24. In October, November, and December 2004, Kyle Mangenson, a High Volume Sales Representative, was receiving custom lead sources even though he was classified as a "high volume" representative. Upon information and belief, Mangenson was under age forty (40) during the end of 2004, and, in any event, was substantially younger than Plaintiff.

25. Plaintiff discussed the matter with Raleigh General Manager Bob Gray on December 29, 2004.

26. Plaintiff told Manager Gray that he thought that he, Plaintiff, was being assigned fewer telemarketing leads due to his age.

27. Manager Gray told Plaintiff that he would refer the matter back to Sales Manager Sargent, who was on vacation at the time of the December 29, 2004 meeting.

28. In late December 2004, Plaintiff and Sales Manager Sargent exchanged emails regarding the telemarketing assignments.

29. Plaintiff's emails and discussions with Sales Manager Sargent were professional, polite, and did not constitute insubordination.

30. Manager Sargent told Plaintiff that she had discretion to make the telemarketing assignments as she saw fit, regardless of the distinction between "high volume" and "custom" sales persons.

31. Manager Sargent never retracted or modified her earlier statement to Plaintiff that sales representatives could not be classified as both "high volume" and "custom."

32. Dissatisfied with Manager Sargent's explanation, Plaintiff attempted to contact JoAnne Abernathy, Defendant's Human Resources Director for the Southern United States via telephone on January 11, 2005. Plaintiff left Director Abernathy a voice mail message requesting that she telephone him. In addition, Plaintiff sent an email to Director Abernathy.

33. In the email, Plaintiff wrote: "I have addressed an issue both with my sales manager, Angie Sargent and the GM, Bob Gray in hopes of correcting a problem / issue before going to the EEOC and filing a complaint."

34. Karen Rice, assistant to Director Abernathy, telephoned Plaintiff a few days later. After exchanging several telephone messages, Plaintiff was finally able to speak briefly with Rice on the telephone. At that time, Ms. Rice explained that she would be handling the matter for Director Abernathy, and Plaintiff requested an in-person meeting with Rice.

35. On January 20, 2005, Sales Manager Sargent told Plaintiff that Ms. Rice was in the office, and was available to speak with him. Plaintiff had no prior notice that Ms. Rice planned to see him at that time.

36. Plaintiff met with Ms. Rice in Manager Gray's office. After exchanging formalities, Ms. Rice told Plaintiff that "we have determined that we are going to terminate you at this time effective immediately."

37. Plaintiff asked Ms. Rice why he was being terminated.

38. Ms. Rice told Plaintiff that had been insubordinate to management for a long period of time.

39. Ms. Rice's purported reason for terminating Plaintiff is false and a pretext for discrimination.

40. Upon information and belief, Plaintiff was replaced by a person under age forty (40).

41. Upon information and belief, Plaintiff was replaced by a person who is substantially younger than Plaintiff.

### IV. FIRST CAUSE OF ACTION
### (ADEA — Age Discrimination)

42. All of the allegations of all of the preceding paragraphs are incorporated by reference.

43. Defendant discriminated against Plaintiff because of his age in terminating his employment. The reasons stated for Plaintiff's termination were false, contrived and a pre-text for age discrimination.

44. Defendant's discriminatory conduct, as stated above, is in violation of the ADEA.

45. Defendant's discriminatory action set forth above was willful and wanton within the meaning of 29 U.S.C. § 629 since the Defendant consciously through its agents and employees terminated Plaintiff because of his age and fabricated reasons for his termination.

## V. SECOND CAUSE OF ACTION
### (ADEA — Retaliation)

46. All of the allegations of all of the preceding paragraphs are incorporated by reference.

47. Defendant terminated Plaintiff's employment in retaliation for having opposed an employment practice made unlawful by the ADEA.

## VI. DAMAGES

48. All of the allegations of all of the preceding paragraphs are incorporated by reference.

49. As a result of the discrimination claimed herein, Plaintiff has suffered loss of past, present, and future earnings, loss or reduction of various other benefits, loss or diminishment of retirement benefits, loss of status, mental anguish and distress, and other monetary losses.

50. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to, wages, social security, pension and seniority benefits, and other benefits due him.

51. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of his right to be free from discrimination, and great humiliation.

52. As a further direct result of said unlawful employment practices, Plaintiff has suffered anguish, outrage, anxiety about his future and his ability to support himself, harm to his employability and earning capacity, painful embarrassment among his friends and co-workers, damage to his good reputation, and disruption of his personal life.

53. Plaintiff has suffered monetary damages in the amount of at least $10,000.00 per year since his termination in virtue of the fact that Plaintiff was out of work for several months after the termination and continues to earn wages lower than the wages he was earning with Defendant. Plaintiff has lost all benefits of continuous employment with Defendants (including, but not limited to, Cobra, Short and Long Term disability, and health insurance).

54. The aforesaid conduct of Defendant and its employees was willful within the meaning of the ADEA since Defendants and their employees intentionally and knowingly fired Defendant due to his age. Defendants have engaged in the discriminatory practice alleged herein with malice or with reckless indifference to Plaintiff's federally protected rights, and Defendant is liable for punitive damages pursuant to the ADEA.

55. Plaintiff timely filed charges of age discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC") for the wrongs stated hereinabove. Plaintiff has received a "Notice of Right-to-Sue" from the EEOC and is filing this *Complaint* within ninety (90) days of his receipt of the Notice.

56. Plaintiff has exhausted all available administrative remedies. This *Complaint* is filed within the requisite time period for filing the ADEA claim.

### VII. JURY TRIAL DEMANDED

57. Plaintiff hereby demands a trial by jury of twelve of his peers.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and that the discrimination alleged herein be remedied in full and requests that this Court:

A. Order a permanent injunction prohibiting Defendant from further acts of age discrimination;

B. Award Plaintiff his sales position or a comparable position, all benefits of continuous employment with Defendant (including, but not limited to, Cobra, Short and Long Term disability, and health insurance) appropriate back pay, future earnings, and reimbursement for income and benefits lost since January 2005, plus interest so as to render Plaintiff whole from the unlawful firing;

C. Award Plaintiff costs of litigation, including reasonable attorney and witness fees;

D. Grant judgment against Defendant, in excess of Ten Thousand Dollars ($10,000.00) for compensatory damages to which Plaintiff is found to be entitled, together with interest;

E. Grant judgment against Defendant, in excess of Ten Thousand Dollars ($10,000.00) punitive damages to which Plaintiff is found to be entitled;

F. A trial by jury on all issues so triable; and

G. Any other additional relief that is appropriate and just.

Respectfully submitted, this the 26th day of August, 2005.

SCHILLER & SCHILLER, PLLC

By: _____
David G. Schiller (NCSB # 26713)
Professional Park at Pleasant Valley
5540 Munford Road, Suite 101
Raleigh, NC 27612
Telephone: (919) 789-4677
Facsimile: (919) 789-4469
Attorneys for Plaintiff Dean M. Morron